**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | | |
|---|---|---|
| Arrington Miles Gill, | ) | No. CV-12-02707-PHX-FJM |
| Plaintiff, | ) | **ORDER** |
| vs. | ) | |
| John D. Ferguson, et al., | ) | |
| Defendants. | ) | |

Plaintiff Arrington Miles Gill, an inmate at the La Palma Correctional Center in Eloy, Arizona, brought this pro se civil rights action under 42 U.S.C. § 1983 against Ross Forrest, a correctional officer employed by Corrections Corporation of America. Before the court is defendant Forrest's Motion to Dismiss for failure to exhaust administrative remedies (doc. 27), plaintiff's response (doc. 32), and defendant's reply (doc. 34).

**I. Notice**

In his Second Amended Complaint, plaintiff alleges that defendant acted with deliberate indifference to his safety in violation of the Eighth Amendment when defendant failed to properly place him in a seatbelt and then drove recklessly causing injuries (doc. 22). Defendant now moves to dismiss the Second Amended Complaint on the ground that plaintiff failed to exhaust administrative remedies as required by the Prison Litigation Reform Act, 42 U.S.C. § 1997e(a) ("PLRA").

1    Until recently, the Ninth Circuit held that a challenge to a prisoner's failure to exhaust
2 under § 1997e(a) should be raised by a defendant as an "unenumerated Rule 12(b) motion."
3 Wyatt v. Terhune, 315 F.3d 1108 (9th Cir. 2003). Accordingly, defendant quite reasonably
4 filed the pending motion as an unenumerated Rule 12(b) motion (doc. 27 at 3). We then
5 issued a Notice to Gill informing him of his obligation to respond to the motion to dismiss
6 and the consequences if the motion is granted (doc. 28, citing Wyatt, 315 F.3d 1108).
7    As noted in defendant's Reply at 1 n.1, the Ninth Circuit recently held that the failure
8 to exhaust defense must instead be raised by a motion for summary judgment. It is no longer
9 considered a matter of abatement to be raised in an unenumerated Rule 12(b) motion. Albino
10 v. Baca, 747 F.3d 1162, 1166 (9th Cir. 2014), overruling Wyatt, 315 F.3d at 1119-20. We
11 are therefore presented with a preliminary issue of whether plaintiff received sufficient notice
12 of the requirements and effects of defendant's current motion.
13    In Rand v. Rowland, 154 F.3d 952 (9th Cir. 1998), the Ninth Circuit held that a pro
14 se prisoner is entitled to fair notice of the requirements needed to defeat a defendant's motion
15 for summary judgment. Because of the "unique handicaps of incarceration," affirmative
16 notice is required to ensure that "a prisoner's access to the courts is adequate, effective, and
17 meaningful." Id. at 958 (citation omitted). Rand described in detail the necessary elements
18 of the requisite written notice. A prisoner must be informed "in ordinary, understandable
19 language" (1) of his rights and obligations under Rule 56; (2) of his right to file counter-
20 affidavits or other responsive evidentiary materials, (3) that failure to file responsive
21 evidentiary materials may result in the moving party's evidence being taken as true and final
22 judgment entered against him; (4) that losing on summary judgment will end the case without
23 a trial; and (4) of any local rules providing additional requirements. Id. at 960-61.
24    In Wyatt, the Ninth Circuit extended the Rand notice requirements to what the court
25 described as an "unenumerated Rule 12(b) motion" to dismiss for failure to exhaust
26 administrative remedies. 315 F.3d at 1119. The court recognized that the unenumerated
27 Rule 12(b) procedure for "look[ing] beyond the pleadings to a factual record in deciding the
28 motion to dismiss for failure to exhaust" is "a procedure closely analogous to summary

- 2 -

1 judgment." Id. at 1120 n.14. The court required a Rand notice in order to "assure that [the
2 prisoner] has fair notice of his opportunity to develop a record." Id.; Woods, II v. Carey, 684
3 F.3d 934, 938 (9th Cir. 2012).

4     The Notice given to plaintiff in this case advises him that defendant has filed a motion
5 to dismiss, that plaintiff must timely respond to all motions, that failure to respond could be
6 treated as a consent to the granting of the motion, that if the motion is granted, the case will
7 end. (Doc. 28). The Notice further provides that because the motion to dismiss seeks
8 dismissal of the Complaint for failure to exhaust administrative remedies, the Court may
9 consider sworn declarations or other admissible documentary evidence beyond the
10 Complaint, and that if defendant produces admissible evidence demonstrating a failure to
11 exhaust, plaintiff must "produce copies of your grievances and grievance appeals or other
12 admissible evidence sufficient to show that you did exhaust all available administrative
13 remedies." Id. at 2. This Notice satisfies each of the Rand requirements.[1]

14     The Albino case does not substantively alter the Rand/Wyatt notice requirements.
15 Indeed, the Albino court recognized that "it may be more a matter of a change of
16 nomenclature than of practical operation." Albino, 747 F.3d at 1166. Accordingly, we
17 conclude that, notwithstanding the intervening case law, plaintiff has received sufficient
18 notice of the opportunity to develop a record and the requirements needed to defeat the
19 defendant's motion. It would be a triumph of form over substance to delay the litigation or
20 increase the parties' costs by requiring a second round of notice and memoranda with no
21 attendant benefit.

22 **II. Exhaustion**

23 Proper exhaustion of available administrative remedies is mandatory under the PLRA.
24 Woodford v. Ngo, 548 U.S. 81, 85, 126 S. Ct. 2378, 2382 (2006). Proper exhaustion requires
25 that prisoners "complete the administrative review process in accordance with the applicable

26

27 [1]We note that the typical Rand notice includes instructions regarding LRCiv 56.1(b)
and the need to file a separate statement of facts. A separate statement of facts is not needed
28 in this case and the requirement is therefore waived. See LRCiv 83.6.

- 3 -

1  procedural rules," id. at 88, 126 S. Ct. at 2384, that are defined not by the PLRA, but by the
2  prison grievance process itself, Jones v. Bock, 549 U.S. 199, 218, 127 S. Ct. 910, 922 (2007).
3  "Compliance with prison grievance procedures, therefore, is all that is required by the PLRA
4  to 'properly exhaust.'" Id. at 218, 127 S. Ct. at 922-23. "The level of detail necessary in a
5  grievance to comply with the grievance procedures will vary from system to system and
6  claim to claim, but it is the prison's requirements, and not the PLRA, that define the
7  boundaries of proper exhaustion." Id. at 218, 127 S. Ct. at 923.

8        Plaintiff is a California Department of Corrections and Rehabilitation ("CDCR")
9  inmate currently incarcerated at the La Palma Correctional Center ("LPCC") in Eloy,
10 Arizona. The administrative grievance process for all CDCR inmates is set forth in Cal.
11 Code Regs. tit. 15, § 3084, MTD Ex. 1, ex. A, and further defined by Contract Beds Unit
12 (CBU) Operating Procedure # 510, id. at ex. B.[2] Depending on the nature of the grievance,
13 an inmate must first submit his complaint on either a CDCR Form 602 (Appeal Form), or
14 CDCR Form 602-HC (Health Care Appeal Form).

15       There are three levels of review for both healthcare and non-healthcare appeals. The
16 initial form must be submitted within 30 days of the occurrence of the event. If the first level
17 appeal is denied or otherwise not resolved to the inmate's satisfaction, a second level appeal
18 can be filed. If the second level appeal is not resolved to the inmate's satisfaction, he may
19 file a third level appeal. If an inmate fails to follow the appeals procedure outlined in § 3084,
20 or omits any part of the process, he has not exhausted the administrative remedies available
21 to him. Cal. Code Regs. tit. 15, § 3084.1. An appeal may be rejected for a variety of
22 specified reasons, including "[t]he inmate has not submitted his appeal on the departmentally
23 approved appeal forms." Id. at § 3084.6(b)(14).

24       The tracking of the grievance review depends upon the nature of the grievance. A
25 non-healthcare appeal must be filed on Form 602, is sent to the CBU Appeals Coordinator,

---

[2]Operational Procedure # 510 provides detailed guidelines for out-of-state correctional facilities such as LPCC regarding the process for handling California inmate appeals consistent with Cal. Code Regs. tit. 15, § 3084. MTD, Ex. 2.

- 4 -

1  and is processed through the Inmate Appeals Tracking System. OP 510 (doc. 27-1 at 27).
2  In contrast, a healthcare appeal must be filed on Form 602-HC and is sent to the "California
3  Correctional Health Care Services (CCHCS) Private Prison Compliance and Monitoring Unit
4  (PPCMU) Health Care Appeals Coordinator (HCAC)" and is processed through "the Health
5  Care Appeal Tracking System." Id.

6  Plaintiff completed and submitted a 602-HC–Health Care Appeal Form. He asserted
7  that defendant Forrest "violently slammed on brakes and I was violently thrown forward into
8  the grill gate, hitting head and neck." Id. Plaintiff requested "[c]omplete a medical
9  examination, including X-Rays and MRI of neck & spinal column for further injuries, and
10 if necessary compensation for damages." Id. Plaintiff's 602-HC grievance was screened and
11 processed as a healthcare appeal, responding to plaintiff's specific request for medical
12 services. MTD, Ex. 1 ¶ 49. Plaintiff was informed at each level of the appeals process that
13 "[m]onetary compensation is beyond the scope of the appeals process," and will not be
14 addressed. Response, Ex. A. Because plaintiff filed a medical appeal, the CDCR Litigation
15 Coordinator was not alerted to plaintiff's claim for damages. MTD, Ex. 2.

16 Plaintiff's healthcare appeal was assigned to Health Services Coordinator Burnett.
17 (Response, Ex. A at 2, 7). Plaintiff's healthcare appeal was granted in part when he was
18 referred to a medical specialist for treatment. Id. During the second level appeal, plaintiff
19 was interviewed by a registered nurse and "allowed the opportunity to fully explain [his]
20 appeal issue and to present any new or additional information relative to [his] appeal." Id.
21 at 8. Throughout the appeals process, plaintiff did not provide additional facts indicating that
22 he was alleging wrongdoing against Forrest, but only repeated that he was seeking medical
23 care and compensation. There was no mention of misconduct against Forrest, no mention
24 of a seatbelt, and no indication that plaintiff was asserting that his rights had been violated.

25 On its face, Form 602-HC provides that it should be used to appeal any decision or
26 action of the "California Prison Health Care Services." MTD, ex. G. Form 602-HC further
27 instructs the inmate to "send this appeal and any supporting documents to the Health Care
28 Appeals Coordinator." Id. Because plaintiff requested medical treatment on a Health Care

1 Appeal form, his grievance was processed as a request for medical treatment through the
2 Health Care Appeal Tracking System. Neither the Form 602-HC, nor the nature of the relief
3 sought, alerted LPCC to the facts underlying the Eighth Amendment claim now asserted
4 against Forrest. Plaintiff's ambiguous reference to "compensation for damages" "if
5 necessary," on a healthcare grievance form, MTD, ex. G, not only failed to comply with the
6 prison's grievance procedures, but effectively denied LPCC an opportunity to address
7 Forrest's alleged misconduct or LPCC's liability for damages. See Woodford, 548 U.S. at
8 89, 126 S. Ct. at 2385.

9 We disagree with plaintiff's argument that Operating Procedure 510 does not provide
10 a grievance process "when a CDCR prisoner is injured as a passenger in a vehicle owned and
11 or operated by a CCA employee." Response at 5. OP 510 broadly provides that "[a]ny
12 inmate/parolee under the jurisdiction of the California Department of Corrections and
13 Rehabilitation (CDCR) or contract facilities may appeal any departmental or facility policy,
14 decision, action, condition, or omission which they can demonstrate as having a material
15 adverse effect upon their welfare." (Doc. 27-1 at 27). An alleged failure by a prison
16 employee to put plaintiff in a seatbelt, driving recklessly and causing injuries, clearly falls
17 within this description.

18 More specifically, plaintiff's claim involves a "Staff Complaint" against Forrest.
19 Under OP 510, "staff misconduct" means "staff behavior that violates or is contrary to law,
20 regulation, policy, procedure, or an ethical or professional standard." (Doc. 27-1 at 34).
21 Failure to secure a prisoner in a seatbelt during transport arguably violates a regulation,
22 policy or procedure. Plaintiff's claim against Forrest is a "Staff Complaint" under OP 510,
23 but plaintiff did not pursue this claim through this administrative process as required.

24 According to the California Code of Regulations, if an inmate fails to follow the
25 appeals procedures outlined in § 3084, or omits any part of it, he has not exhausted the
26 administrative remedies available to him. Cal. Code Regs. tit. 15, § 3084.1. Because
27 plaintiff failed to satisfy the grievance procedures established by the prison regulations, and
28 thereby effectively denied LPCC of the opportunity to consider the 8th Amendment claim

1 administratively, we conclude that he has not exhausted his administrative remedies.

## III.

**IT IS ORDERED GRANTING** defendant's motion for summary judgment (doc. 27).

DATED this 11th day of June, 2014.

*Frederick J. Martone*
Frederick J. Martone
Senior United States District Judge